## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MALAYJAH CAMPBELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:25-4293-BAH |
| TIDALHEALTH, INC., | * | |
| Defendant. | * | |
| | * * * | |

### MEMORANDUM OPINION

BEFORE THE COURT are several discovery motions concerning Plaintiff Malayjah Campbell's allegations that Defendant TidalHealth, Inc.'s discovery responses are deficient and fail to comply with a prior Court order. ECFs 34, 37, 41, 46. Also pending are motions to seal certain exhibits filed with Plaintiff's motions. ECFs 39, 42, 48, 49. As explained below, Plaintiff seeks various forms of sanctions for alleged discovery violations, while Defendant moves to strike Plaintiff's filings and/or receive attorney's fees as a sanction against Plaintiff. For the reasons stated below, the Court will grant in part the motions to seal and deny all other pending motions.

## I.    BACKGROUND

Plaintiff Malayjah Campbell alleges that her former employer, Defendant TidalHealth, Inc., discriminated against her based on her pregnancy, in violation of Title VII of the Civil Rights Act of 1964 and the Pregnant Workers Fairness Act (PWFA). ECF 8, at 3. Naturally, central issues in discovery are whether and when TidalHealth knew of Campbell's pregnancy, what requests Campbell made in connection with her pregnancy, and the timing and reasons for the end of Campbell's employment with TidalHealth.

1

In April 2026, the parties advised the Court of multiple discovery disputes. These included, among other things, the sufficiency of TidalHealth's document production in response to Campbell's discovery requests. The Court held a telephone conference on May 8, 2026 and issued an order on May 14, 2026 (the "May 14 Order") memorializing the reasons for granting in part and denying in part Campbell's motion to compel additional document production. *See* ECF 33.

The motions now pending are intertwined with the issues raised back in April and the Court's reasons for its ruling in May. Therefore, for ease of reference, it is beneficial to summarize the Court's resolution of the parties' previous contentions before addressing the current arguments.

### A. Issues and rulings from the May 14 Order

Back in April 2026, Campbell challenged the sufficiency of TidalHealth's responses to Requests for Production (RFPs) 17, 18, 25, 26, and 27.

She argued that the response to RFP 17 was deficient because some of TidalHealth's emails referenced other, unproduced communications among TidalHealth employees and because Campbell suspected that a July 23, 2024 email was fabricated after her termination. ECF 33, at 1. For the first contention, Campbell sought additional document production; for the second, she sought production of this specific email in native format. *Id*. at 2-3. The Court denied this request for two primary reasons. *Id*. First, on the issue of production format, TidalHealth's production complied with Federal Rule of Civil Procedure 34(b)(2)(E)'s requirements for electronically stored information (ESI) in that it produced the challenged email in PDF format and the RFP did not specify a requested format for production. *See* ECF 33 at 2-3; Fed. R. Civ. P. 34(b)(2)(E)(ii) ("If a request does not specify a form for producing electronically stored information, a party

must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."); *Aguilar v. Immigr. & Customs Enf't Div.*, 255 F.R.D. 350, 357 (S.D.N.Y. 2008) ("In sum, as a recent article has noted, if a party wants metadata, it should 'Ask for it. Up front. Otherwise, if [the party] ask[s] too late or ha[s] already received the document in another form, [it] may be out of luck.'" (quoting Adam J. Levitt & Scott J. Farrell, *Taming the Metadata Beast*, N.Y.L.J. May 16, 2008, at 4) (alterations in original)); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 559-60 (N.D. Ill. 2008) (denying motion to compel production in native format where producing party provided a PDF and a hard copy and requesting party did not mention seeking metadata until after production; "It seems a little late to ask for metadata after documents responsive to a request have been produced in both paper and electronic format.  Ordinarily, courts will not compel the production of metadata when a party did not make that a part of its request." (citations omitted)).  Because Campbell acknowledged that the produced PDFs were accessible and text searchable, TidalHealth complied with Rule 34(b)(2)(E)'s requirements concerning the proper format for producing electronically stored documents.  *See, e.g.*, *Bah v. Sampson Bladen Oil Co., Inc.*, No. 5:23-cv-330, 2024 WL 3678337, at *6 (E.D.N.C. Aug. 5, 2024) (collecting authority reflecting that "courts generally agree[] that, in most cases, a production is reasonably usable if it is text searchable").  As a final point, the Court also observed that Plaintiff indicated she lacked the technology to review the challenged email in native format, raising concerns about whether a native file would be "reasonably useable" under the circumstances.  ECF 33 at 3.  Ultimately, although Campbell believed the July 23, 2024 email to be fabricated, "she did not offer anything more than speculation that the produced email was

3

inauthentic or otherwise fabricated or that Defendant has otherwise spoliated evidence."

*Id*. at 2.

Second, on the issue of whether document production was complete, the Court

concluded that TidalHealth's production reflected a reasonable search for responsive

material:

> Plaintiff's other challenge regarding Request No. 17 is that the production is incomplete because produced communications reference the existence of other communications. Defendant argues that it produced all responsive documents. . . . Before certifying a discovery response, the certifying attorney must "make 'a reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand.'" *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 503 (D. Md. 2000) (quoting Advisory Committee Notes to 1983 amendments to Fed. R. Civ. P. 26(g)).

> At the teleconference, the Court asked Defendant about its discovery process. Defense counsel described its investigation, identification of potentially relevant custodians, search terms used, and search for responsive documents. Nothing presented to the Court, either in the parties' position letters or during the teleconference, suggests the existence of other *written* communications that were responsive yet not produced. It may be that the references to other communications reflect oral, rather than unproduced, written communications. Based on the responses on the teleconference, the Court is, at this time, satisfied that Defendant complied with its production obligations with respect to Request No. 17. *Cf. MuniCap, Inc. v. Wilson*, No. SAG-24-1274, 2025 WL 3003968, at *11 (D. Md. Oct. 24, 2025) (denying motion to compel based on suspicion of missing documents where "there is nothing in the record to indicate that" the producing party failed to satisfy Rule 26).

ECF 33 at 3-4 (emphasis in original).

Regarding RFP 18, the Court found that TidalHealth conducted a

reasonable search for documents responsive to Campbell's request for "all HR call

logs and phone records to or from Plaintiff." *Id*. at 4. Campbell stated that her

phone records reflected a call from a TidalHealth phone number on a certain date

and time yet TidalHealth did not produce any call logs reflecting an outgoing call

4

from the human resources department. *Id.* Defense counsel represented that upon investigating the request, it learned that TidalHealth did not maintain internal call logs that would reflect, for example, whether an outgoing call to Campbell (or any other individual) originated from human resources as opposed to a different department. *Id.* Based on defense counsel's description of its process for identifying the existence of any potentially responsive records, the Court found no additional search or production necessary. *Id.*

Likewise, the Court found sufficient TidalHealth's searches for documents responsive to RFPs 25-27, insofar as no further searches were necessary to determine the existence of any "training materials, attendance records, and logs relating to pregnancy discrimination, pregnancy-related accommodations, or compliance with the Pregnant Workers Fairness Act." *Id.* The order noted that TidalHealth produced certain employee handbook and training materials as well as "a description of the substance and location of the standard EEOC poster that described the rights under the PWFA." *Id.* While not ordering any further searches for material, the Court ordered TidalHealth to produce a copy of the EEOC poster, finding that its production of a summary of the poster's contents was insufficient when TidalHealth could have produced a copy of the poster or, at the least, a verbatim recitation of its contents. *Id.*

Upon reaching these conclusions, the Court directed defense counsel to ensure its Rule 26(g) certifications reflected information provided to the Court during the teleconference about the searches and discoveries, to the extent such information was not previously conveyed to Campbell or otherwise reflected in its discovery responses. *Id.* at 3-4. TidalHealth certified their productions, consistent

with the Court's directives, following the teleconference.  *See* ECF 44 at 4; ECF 34-4 at 21.

### B. The Pending Motions

Campbell now moves for sanctions, arguing that TidalHealth's certifications are insufficient and, as a result, the Court must compel production of several items including certain emails in native format.  Campbell also seeks sanctions in the form of an order precluding TidalHealth from introducing certain evidence at trial, requiring forensic examination of produced materials, and awarding costs and expenses to Campbell.  *See* ECFs 34, 37, 43.

As justification for her asks, Campbell latches onto the Court's statement in the May 14 Letter Order that "[i]f non-speculative evidence of spoliation arises," the Court would consider the Plaintiff's contention that TidalHealth fabricated or manipulated the July 23, 2024 email.  *See* ECF 33 at 2.  As her "non-speculative evidence," Campbell submits that the reverse chronology of the emails in the PDF and "continuity concerns . . . warrant judicial review before Defendant is permitted to certify its responses as complete and correct."  ECF 34 at 4.  At their core, Campbell's arguments focus on alleged discrepancies and chronological irregularities that betray TidalHealth's certifications regarding its discovery responses, demonstrate the insufficiency of TidalHealth's responses, and require production in native format and forensic examination.  As a result, she emphasizes a need for curative measures to account for TidalHealth's failure to preserve and produce authentic copies of electronically stored information.

In response, TidalHealth insists that Campbell's motions must fail because they are procedurally improper, rest on faulty arguments using generative artificial intelligence and misrepresentations of legal authority, fail to provide any non-speculative

grounds for suspecting spoliation, and rely on a misreading of how emails are produced. ECF 44 at 1-2. In addition to seeking denial of Campbell's requests, TidalHealth moves for attorneys' fees incurred in responding to the motions and other sanctions.

## II.   LEGAL STANDARD

"District courts enjoy substantial discretion in managing discovery, including granting or denying motions to compel." *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

## III.   ANALYSIS

In total, Plaintiff filed nine briefs: a motion for sanctions and other relief (ECF 34); an "Emergency Supplemental Motion for Relief" that expands on the issues raised in the first motion (ECF 37); an emergency motion to seal her Exhibits 25 through 39 (ECF 39); a motion to seal her Exhibits 4 and 11 (ECF 42); a reply in support of the original motion and seeking to strike TidalHealth's opposition and have defense counsel disqualified (ECF 43); a reply in support of the "Emergency Supplemental Motion" and seeking to strike TidalHealth's opposition (ECF 45); a duplicate of the "Emergency Supplemental Motion" (ECF 46); an emergency motion to seal (ECF 48); and a "Notice of Clarification" that challenges TidalHealth's filing regarding Campbell's duplicate filings (ECF 50).[1] TidalHealth filed three submissions: a "Motion to Strike and Opposition to Plaintiff's

---

[1] Regarding the duplicates, as best the Court can discern from the docket, Campbell filed ECFs 37 and 39 electronically and, in addition, mailed a copy of the same to the clerk's office, which stamped and docketed the mailing at ECFs 46 and 48 upon receiving them. The versions at ECFs 46 and 48 were stamped received on June 18, 2026; the handwritten dates of services in those filings seem identical (in substance and appearance) to those in ECFs 37 and 39, which were filed on June 1, 2026. Moving forward, Campbell should either file electronically or mail a copy to the clerk's office, but not both.

Motion for Sanctions . . . and Motion for Attorneys' Fees" (ECF 41); an opposition to Campbell's "Emergency Motion" (ECF 44); and a "Response to Plaintiff's Duplicate Emergency Motions Docketed on June 18, 2026," which incorporates by reference ECF 44 to the extent a response to a duplicate filing is necessary (ECF 49).

Thus, the motions now before the Court are, in some form or fashion, Campbell's motions for sanctions or other relief, Campbell's motions to strike TidalHealth's oppositions, Campbell's motion to disqualify defense counsel, and TidalHealth's motions to strike Campbell's motions and for attorneys' fees.  For the reasons stated below, the Court denies each and all of these motions.

## A.  The Motions to Strike are denied.

TidalHealth moves to strike Campbell's sanctions motion as "procedurally deficient for multiple reasons."  ECF 41-1 at 1.  TidalHealth cites violations of the Local Rules' requirement that the parties meet and confer about a discovery dispute before a party files a discovery motion.  *Id*. at 5-7.  Indeed, Local Rule 104 warns that the Court "will not consider any discovery motion" that lacks a certificate reflecting the occurrence of a meet-and-confer compliant with other provisions of the Rule.  Loc. R. 104.7 (D. Md. 2025); *see also* Fed. R. Civ. P. 37(a)(1) (requiring motions to compel include a certification describing attempts to confer with the opposing party to resolve the dispute).  And the Local Rules describe the process for filing a motion to compel—which includes the exchange of briefs before filing *any* of them on the docket—if such a conference is unsuccessful.  Loc. R. 104.8(b) (D. Md. 2025).

The parties dispute whether Campbell attempted a good faith meet and confer. TidalHealth states that she "has not properly certified **any** efforts to have a conference" with defense counsel before filing her motions.  ECF 41-1 at 7 (emphasis in original).

Instead, TidalHealth maintains, Campbell rebuffed defense counsel's multiple offers to meet and confer after the May 14 Order. *Id.* Campbell insists the inverse occurred: that she attempted a meet and confer after the May 14 Order but defense counsel declined. ECF 43 at 3-4; ECF 45 at 2-3. Whose version is correct is immaterial: as TidalHealth observes, Campbell neither filed the Local Rule 104.7 certification nor followed Local Rule 104.8's process for formal motions to compel. In addition, Campbell's filing also conflicts with the Court's case-specific order describing an informal discovery dispute process, which aims to streamline resolution of disputes without the costs that formal briefing imposes on the Court's resources and on the parties. *See* ECF 14 (informal discovery order).

TidalHealth further observes, accurately, that failure to comply with the Local Rules or a case-specific discovery order warrant denial of a discovery motion, irrespective of its merits. *See, e.g.*, *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 585 (D. Md. 2010) ("Because Defense counsel has not complied with Rule 37(a)(1) or Local Rule 104.7, the Court will not consider Defendant's motion to compel."); *G&G Closed Circuit Events, LLC v. Bar Elite, LLC*, No. RDB-23-2483, 2024 WL 1214217, at *3 (D. Md. Mar. 21, 2024) (collecting authority in this District denying discovery motions based on failures to comply with Local Rule 104.7). As a result, TidalHealth moves to strike each of Campbell's discovery-related motions. That is a proper request and would be an appropriate outcome. *See Anderson v. Discovery Commc'ns*, 814 F. Supp. 2d 562, 568-69 (D. Md. 2011); *Hall v. Balt. Police Dep't*, No. RDB-24-1137, 2024 WL 4278132, at *3 (D. Md. Aug. 24, 2024).

However, based on the context of this dispute—including the fact that it has been explored previously and, as explained below, no new evidence or legal authority alters the

Court's previous conclusions—the Court declines to strike the motions and, instead, will address them in the interest of judicial efficiency. *See G&G Closed Circuit Events,* 2024 WL 1214217, at *3 n.4 (observing that failures to comply with the meet-and-confer requirement are excused "in rare instances" involving, among other things, an interest in expedience); *Keralink Int'l, Inc. v. Stradis Healthcare, LLC*, No. CCB-18-2013, 2021 WL 1198150, at *5 (D. Md. Mar. 30, 2021) (finding it "more expeditious to consider the disputes on their merits" despite failures to comply with Local Rule 104.8(b)); *Savage v. United Collections Bureau*, No. JRR-25-1723, 2025 WL 2244480, at *2 (D. Md. Aug. 6, 2025) (exercising discretion to hear a discovery motion, despite non-compliance with Local Rule 104.7, due to an imminent deposition and in the interest of "'provid[ing] guidance that, it is hoped, will reduce the likelihood of future discovery disputes'") (quoting *Madison v. Harford Cnty., Md.*, 268 F.R.D. 563, 564-65 (D. Md. 2010).[2] However, this should not be interpreted as a sign that future procedural violation will (or are likely to) be ignored; "the Court expects compliance with [the Local Rules and informal discovery procedures] going forward." *Hall*, 2024 WL 4278132, at *3.

For this reason, TidalHealth's motion to strike Campbell's motions based on procedural deficiencies are denied.

Likewise, the Court denies Campbell's motion to strike TidalHealth's oppositions to her motions. Without citing any legal authority, Campbell argues that the Court should strike TidalHealth's opposition because it "failed to address the substance of Plaintiff's motion," resorted to attacks on Campbell's alleged use of generative artificial intelligence

---

[2] Discovery closed after the parties completed briefing. *See* ECF 17. Thus, it would be inefficient and disruptive of the post-discovery schedule to delay this resolution until the parties can comply with the letter of Rule 104.8.

to create her motions, and, in her view, misrepresented the parties' prior discussions. ECF 45 at 5.  The Court disagrees with her contention that TidalHealth's filings do not address the dispute giving rise to her motions.  Therefore, it will not strike TidalHealth's oppositions.

### B. Plaintiff's motions for sanctions are denied.

Throughout her filings, Campbell takes issue with defense counsel's representations about TidalHealth's productions and speculates that TidalHealth (or its counsel) has manipulated or withheld discovery to a deceptive and misleading level worthy of discovery sanctions.  The Court addresses her five core theories and arguments in turn, finding each insufficient—on either law or facts—or irrelevant to the issues at hand.

First, as she states, "Rule 26(g) is the central issue presented by" her motions.  ECF 34 at 14.  Despite defense counsel's Rule 26(g) certifications of its discovery responses, Campbell articulates that she has identified "chronology irregularities, missing surrounding communications, shifting attendance calculations, and inconsistencies between Defendant's interrogatory responses and later-produced emails."  *Id.* at 12. Because of these alleged discrepancies, Campbell insists that TidalHealth's 26(g) certification to its discovery responses cannot be truthfully signed and, as a result, any representation to the Court about the completeness of its responses is willfully misleading.  *Id.* at 11.  However, Campbell does not articulate a legal basis for finding that TidalHealth's representations—both written in discovery exchanges and orally presented to the Court—are deficient.  Her arguments on this point cite *Mancia v. Mayflower Textile Servs. Company*, 253 F.R.D. 354, 357-60 (D. Md. 2008), for the proposition that the Court should order relief under Rule 26(g) in the form of "supplementation,

11

production in a usable form where necessary to test chronology and continuity, and judicial review whether Defendant's certification can fairly be made at all in the production's current state." ECF 34 at 14.

It is true that Rule 26(g) imposes an affirmative duty on counsel to behave responsibly during discovery and fulfill legitimate discovery needs. *Mancia*, 253 F.R.D. at 357-58. The Court may issue sanctions when a party violates this principle. *Id*. at 358. In May 2026, the Court inquired into defense counsel's discovery process and found that TidalHealth and its counsel made a reasonable inquiry in efforts to respond to production requests. ECF 33, at 3-4. As noted above, the Court ordered TidalHealth to supplement any discovery responses or Rule 26(g) certifications to the extent that information provided as part of the discovery dispute or teleconference had not been provided in written discovery responses. *See id*. at 4. TidalHealth did so. Campbell now insists that the certifications are insufficient because she continues to believe that communications within the scope of her requests exist and remain unproduced. This is the contention the Court addressed in May 2026. No new facts or legal authority change the record that existed in May or affect the reasons for the Court's conclusions. In short, Campbell offers no non-speculative explanation the Court did not consider previously.

This is not to say that all of her arguments this time are the exact same. Campbell now expands on her reasoning and articulates specific discovery that she believes supports her theory. But the Court is not so convinced. For one, the Court does not agree with her argument that TidalHealth's certification verbiage sneakily and intentionally omitted its Rule 26(g) obligations by certifying only part of its responses. *See* ECF 37 at 2-3. In Campbell's view, because defense counsel "only certifies their 'responses and objections'" but does not specifically include the word "documents" in addition to the

reference to written responses, "Defendant's entire documentary production in this case remains uncertified." ECF 37 at 3. That does not compute. The document production contemplated by the written response falls within the scope of the certification.

Alleged verbal misdirection aside, the original motion and much of the supplemental motion sound the alarm bells based on Campbell's description of alleged chronological inconsistencies. "Most notably, Defendant's July 22-23, 2024 email production includes communications appearing outside ordinary chronological sequence, including a communication timestamped July 22, 2024 that appears to respond to a July 23, 2024 email chain." ECF 34 at 15. The supplemental motion expands on this observation, explaining that (1) she identified an email sent at 8:40 a.m. on July 23, 2024 by an individual named Lady Johnson to an individual named Hanh Hang, (2) when she raised the issue, defense counsel supplemented its production with a different July 23, 2024 email sent at 8:48 a.m. on July 23, 2024 from Lady Johnson to an individual named Tennille Gear, and (3) that both emails received a response from Tennille Gear on July 22, 2024 at 7:14 a.m. ECF 37 at 3-5; *see also* ECF 34-4 Exhs. 22, 23 (the emails at issue). Campbell suspects these emails reflect "a reconstructed or combined thread presentation assembled from separate communications." ECF 34 at 15. She takes issue with the fact that the custodian for the 8:40 a.m. email appears to be one of defense counsel and the custodian for the 8:48 a.m. email is Lady Johnson. ECF 37, at 4.

But nothing about these documents strikes the Court as irregular or otherwise indicative of manipulation or spoliation. It has long been common for emails, when printed, to appear in reverse chronological order. *See, e.g.*, *United States v. Safavian*, 435 F. Supp. 2d 36, 42 (D.D.C. 2006) (noting, in a dispute about email authenticity, that

"most e-mail chains appear in reverse chronological order"); *Mandarin Oriental, Inc. v. HDI Glob. Ins. Co.*, No. 23-cv-4951 (JPC) (SLC), 2025 WL 1638071, at *8 (S.D.N.Y. June 10, 2025) ("Taking the emails in chronological—i.e., reverse—order . . . ."), *objections overruled*, 2025 WL 3101234 (S.D.N.Y. Nov. 6, 2025).  The most natural reading of the information set forth in Campbell's briefs is that the July 23 emails are responses to the July 22 email.  The printed name appearing at the top of the emails—the "custodian" as Campbell describes it—appears to indicate from whose account the emails were printed. The Court does not agree that the differences described indicate nefarious and improper changes to custodian, sender, recipient, time, or other aspect of the emails.  Nor does the Court read the emails as having "chronologically impossible timestamps" as Campbell describes.  In the Court's view, the record remains devoid of any non-speculative evidence of spoliation for these reasons and those previously articulated in May.

Unconvinced that the disputed emails indicate spoliation or other improper conduct, the Court will not grant Campbell's request for native files.  As the May 14 Order explains, TidalHealth's production complied with Rule 34(b)(2)(E)'s provisions governing ESI, and production in native format was not warranted.  Campbell's ability to access and review native files was only one reason for the Court's decision; even if Campbell has access to the software necessary to view the requested native files, that fact would not displace or outweigh the reasons that the production complied with Rule 34(b)(2)(E).

Campbell also seeks native files as part of her challenge to the authenticity of the produced documents.  She insists that examination of native files is necessary to determine authenticity and, as a result, whether TidalHealth has complied with its discovery obligations.  ECF 34, at 13.  This quest regarding authenticity does not change

14

the outcome.  Authenticity of ESI is often a matter left for trial.  *See* Fed. R. Evid. 901; *United States v. Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992) ("Resolution of whether evidence is authentic calls for a factual determination by the jury"); *Gunter v. Alutiiq Advanced Sec. Solutions, LLC*, No. RDB-20-03410, 2021 WL 6126295, at *4 (D. Md. Dec. 28, 2021) ("More typically, the determination of the authenticity of evidence is a matter to be decided by the trial judge pursuant to the Federal Rules of Evidence, including Rules 901 and 902, not the discovery judge pursuant to the Federal Rules of Civil Procedure."). Nothing on this record suggests the emails have been altered.  Thus, nothing suggests this is a case where authenticity must be examined at this stage.  As a final note on the topic of native files, Campbell also seeks such production for *all* emails responsive to RFP 17, created between February and August of 2024, in native format.  ECF 34 at 19.  For the same reasons discussed in the context of the July 2024 emails—primarily, the fact that TidalHealth's production complies with Rule 34(b)(2)(E)—the Court will not order such production.

Beyond production of native files, Campbell seeks a host of other sanctions, including "forensic review" of the native files; production of phone logs, internal switchboard routing data, and call notes; limits on TidalHealth's ability to introduce certain evidence; adverse jury instructions; and monetary sanctions.  ECF 34 at 18-19; ECF 43 at 20-21.  In general, she relies on *Victor Stanley v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010), for the proposition that "the court may consider curative or other appropriate measures" under Federal Rule of Civil Procedure 37(e) where "relevant [ESI] should have been preserved but was not preserved or cannot now be restored or replaced through additional discovery."  ECF 34 at 11. While *Victor Stanley* does not mention, specifically, Rule 37(e), the Court recognizes that where relevant ESI was not preserved

15

because a party did not take reasonable steps to preserve the same, it may, upon a finding of prejudice and intent to deprive, not allow the party to use that information unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c). The Court may then presume the information was unfavorable to the party who lost it, instruct the jury that it may or must make the same presumption, or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

For the reasons explained above, Campbell does not demonstrate that any ESI is missing or that TidalHealth acted with an intent to deprive her of any value in any lost information. She raises the same speculative theories the Court found unavailing during the May telephone conference. As for other requested materials, the Court will not order further production. The May 14 Order considered the request for internal call logs. Defense counsel explained the efforts to determine the existence and location of such materials, the production of materials found to exist, and that certain requested items such as internal call logs do not exist. The pending motions do not undermine defense counsel's explanations and suggest the existence of unproduced documents responsive to Campbell's requests.

Campbell advances other arguments that appear irrelevant to the issues before the Court and the governing law. For example, Campbell argues that the emails produced reflect some inconsistencies in TidalHealth's narrative regarding when decisionmakers may have been aware of Campbell's pregnancy. ECF 34 at 16-17. The Court takes no position on whether the contents of the communications are inconsistent or otherwise suggest that TidalHealth's decisionmaking narrative lacks credibility. Even if there is some apparent inconsistency, that does not necessarily mean there is a discovery violation. Myriad cases involve potentially conflicting documents; what inference(s) to

16

draw from any alleged inconsistencies is often a primary issue a factfinder to determine when addressing the ultimate issue. She also refers to the "Doctrine of Imputed Corporate Knowledge," without citing to any authority. *Id.* at 13. This, too, appears to be more of an issue about the viability of her discrimination claim than about whether TidalHealth has complied with its discovery obligations. Campbell also cites perceived oddities and anomalies about the produced emails. ECF 37 at 5-12. And she refers to a recently filed lawsuit concerning human resources practices at TidalHealth. ECF 43 at 13-15. These barebones or irrelevant arguments grasp at straws. None provides enough factual or legal basis to alter the conclusions articulated above regarding the discovery challenge before the Court.[3]

Campbell also makes several requests related to monetary sanctions against TidalHealth as well as disqualification of counsel. ECF 43 at 15-19. The Court will not award Campbell any monetary relief or otherwise sanction defense counsel after rejecting every argument in Plaintiff's motions.

For all these reasons, Campbell's motions for sanctions, and all the requested relief contained in those filings, are denied.

### C. TidalHealth's Motion for Attorneys' Fees is denied.

In addition to opposing Campbell's arguments, TidalHealth seeks attorneys' fees incurred in responding to the motions. ECF 44, at 2. TidalHealth is correct that Rule 37(a)(5)(B) requires a court, after giving the unsuccessful movant an opportunity to be heard, to pay the opposing party its reasonable expenses incurred in filing its opposition.

---

[3] The same is true for Campbell's assertion of federal investigations concerning TidalHealth and alleged Medicare fraud. ECF 37 at 14. In short, any "history of federal regulatory scrutiny," as Campbell describes it, does not, on its own, persuade the Court that any spoliation or other discovery violation has occurred in this case.

17

TidalHealth emphasizes that the Rule's text does not create an exception for self-represented parties. *Id*. at 7. However, the Rule does afford a court discretion in ordering such payment "if the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).

The Court does not find Campbell's motions—or the arguments therein—substantially justified. And the Court recognizes that TidalHealth had to file two oppositions (as well as third, brief submission incorporating the contents of another submission) based on Campbell's filing of multiple motions without adhering to the Court's procedural protocols.

However, Campbell's *pro se* status weighs against the awarding of attorney's fees. *See Whately v. S.C. Dep't of Pub. Safety*, No. 3:05-0042-JFA-JRM, 2007 WL 9751904, *5 (D.S.C. Mar. 9, 2007) (declining to award attorney's fees against a pro se party and collecting authority considering a pro se party's ability to assess whether arguments may be frivolous); *see also Miller v. Los Angeles Cnty. Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir. 1987) ("pro se plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim"); *Greenier v. Pace, Local No. 1188*, 245 F. Supp. 2d 247, 250 (D. Me. 2003) ("Courts should consider a pro se plaintiff's ability to recognize the objective merit of his claims before awarding fees to a successful defendant." (citing *Houston v. Norton*, 215 F.3d 1172, 1174 (10th Cir. 2000), and then citing *Miller*, 827 F.2d at 620)). Campbell expresses, now as she did before, a firm belief that discovery is missing in a case where she alleges unlawful discrimination based on her pregnancy—a circumstance that likely generates strong feelings. Her arguments also rely on some apparent misunderstanding of the common way in which email conversations appear when printed. And this is the

18

first instance of excessive filings during discovery.  Taken together on this record and in light of the previous conference call, these circumstances do not warrant sanctions.  *Cf.* *Greenier*, 245 F. Supp. 2d at 250 (declining to impose monetary sanctions on a pro se plaintiff after granting the defendant's motion for sanctions and dismissing the case with prejudice; "Plaintiff's persistent frivolity reflects a zealous advocacy of his underlying claims rather than bad faith.").

One other consideration worth discussing is the potential misuse of generative artificial intelligence. The parties dedicate a substantial portion of their respective filings to whether Campbell's motions involve improper use of or reliance on generative artificial intelligence, including whether she misstates legal authority or she uploaded confidential documents into a generative artificial intelligence program.  TidalHealth raises these issues primarily as a reason to deny her motion before also citing them as a basis for a fee award.  ECF 41-1 at 7-11; ECF 44 at 7.  In an ironic turn, Campbell characterizes TidalHealth's arguments as "unsupported speculation," ECF 43 at 5-6, and "contradicted by the record," ECF 45 at 3.  Campbell denies submitting documents into any generative artificial intelligence tools but admits to using unspecified "available tools solely to express [her] arguments in proper legal format, the same way any litigant uses available legal resources." ECF 45 at 3.

Campbell's filings bear common hallmarks of generative artificial intelligence, including their verbosity (more than 60 pages of briefing) about a relatively narrow factual and legal dispute; numerous formatting and grammatical inconsistencies suggestive of certain tools or software; and, as TidalHealth highlights, use of nonsensical, inconsistent, and difficult to follow titles of her briefs.  *See* ECF 44 at 3 n.2.  More concerning than those are any misrepresentations about the law.  While the filings do not

outright "hallucinate" any case, the citations do not support Campbell's asserted propositions in the manner she attempts. For example, while *Aguilar* is a real case from the Southern District of New York (cited above and in the May 14 Order), the discussion at Campbell's pincites does not say exactly what she represents. *See* ECF 34 at 16; ECF 43 at 15. Also, her filings miss the mark in describing the import of this Court's decision in *Mancia*. *See* ECF 34, at 14. These could be viewed as a matter of (im)precision by a self-represented party lacking formal legal training rather than willful misleading or fabrication. In combination with other aspects of Campbell's filings, they corroborate her admitted use of generative artificial intelligence.

The Court is hesitant to impose sanctions that, in essence, punish a *pro se* litigant for using permissible tools that may aid a self-represented party with no formal legal training. *See, e.g.*, *Kruglyak v. Home Depot U.S.A., Inc.*, 774 F. Supp. 3d 767, 770-72 (W.D. Va. 2025) (collecting authority and declining an award of attorney's fees in the absence of bad faith by a pro se party who cited to fictitious cases and misrepresented holdings of cases as a result of using generative artificial intelligence platforms). But self-represented individuals—like any other party or attorney—must be mindful of the potential for these tools to generate misrepresentations of cases or other legal authority. *Kruglyak*, 774 F. Supp. 3d at 770; *United States v. Malik*, No. JKB-16-324, 2025 WL 2687413, at *1 & n.2 (D. Md. Sept. 19, 2025). Misrepresenting legal authority in a filing violates Federal Rule of Civil Procedure 11, even when done by a *pro se* litigant, and may warrant sanctions. *See, e.g.*, *Johnson v. Nationstar Mortg., LLC*, No. JRR-25-855, 2026 WL 1179961, at *4-5 (D. Md. Apr. 30, 2026); *Thomas v. Pangburn*, No. CV423-046, 2023 WL 9425765, at *4-7 (S.D. Ga. Oct. 6, 2023); *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-cv-04482-YGR (DMR), 2025 WL 2098597, at *2-3 (N.D. Cal. July 25, 2025).

As noted above, Campbell's briefs do not outright hallucinate any cases or quotations. Her citations do not involve such a blatant fabrication or misrepresentation of the cases' discussions and conclusions in a manner that suggests that she acted in bad faith or otherwise recklessly misled the Court in a manner that warrants monetary sanctions. *See, e.g.*, *United States v. Hayes*, 763 F. Supp. 3d 1054, 1071-73 (E.D. Cal. 2025) (collecting authority imposing sanctions against attorneys and pro se litigants due to hallucinated citations and misrepresenting authority) ; *Mbow v. Mackert*, No. BAH-24-3674, 2026 WL 221711, at *14 (D. Md. Jan. 28, 2026) (ordering self-represented party to explain hallucinated cases and inaccurate descriptions where "as many as half" of the citations were "inaccurate or non-existent"). While any misrepresentation is serious, this circumstance does not appear to rise to even the level in *Kurglyak*, where the court refrained from imposing monetary sanctions despite citations to nonexistent cases. *Cf. Johnson*, 2026 WL 1179961, at *4-5 (declining to issue show cause order regarding pro se party's citation to only one hallucinated case but cautioning that future instances may result in a show cause order and sanctions); *Akins v. Ratliff*, No. 25-cv-712, 2026 WL 1146251, at *9 (M.D.N.C. Apr. 28, 2026) (cautioning pro se party of potential for sanctions after determining that the party's filings "contain over a dozen dubious citations").

However, going forward, Campbell must exercise care in any use of generative artificial intelligence tools, to ensure that they do not generate any fictitious cases or, as best as she can determine, incorrect explanations of real cases. She is responsible for verifying the accuracy of any legal research she includes in any future submission to the Court. Further, the Court cautions that a failure to exercise such care could result in future sanctions, including an award of attorneys' fees if future filings reflect bad faith or objectively improper arguments or authority. *See Kruglyak*, 774 F. Supp. 3d at 773

21

(declining to impose sanctions, advising pro se party of duty to identify cases resulting from using generative artificial intelligence, and forewarning that failure to verify future submissions for accuracy could lead to being held in contempt of court); *Gjovik v. Apple Inc.*, No. EMC-23-4597, 2025 WL 1447380, at *7 (N.D. Cal. May 19, 2025) (same).

In addition, Campbell must ensure that any use of generative artificial intelligence does not violate the stipulated order governing confidential materials. *See* ECF 21. TidalHealth expresses concern that Campbell violated the February 27, 2026 Protective Order's prohibition on submitting discovery material to public generative artificial intelligence tools. ECF 41-1 at 11; *see* ECF 21 at ¶ 8 (imposing limitations on use of generative artificial intelligence). Campbell denies doing so. ECF 45 at 3. If future filings suggest improper submission of discovery materials to generative artificial intelligence tools, the Court will be more inclined to issue a show cause order and consider sanctions.

### D. Campbell's motions to seal are granted as to Exhibits 4 and 11 and otherwise denied without prejudice to renew.

Campbell moves to seal certain exhibits to her discovery motions. The first sealing motion—styled an "Emergency Motion"—concerns Exhibits 25 through 39, and the second motion includes Exhibits 4 and 11 in her request. ECFs 39, 42. TidalHealth has not opposed either sealing request. In opposing her sanctions motions, TidalHealth's opposition explains that filing Exhibits 4 and 11 on the public docket violated the parties' stipulated Protective Order. ECF 41-1 at 8. Campbell, to her credit, filed the second sealing motion the next day, as an attempt to promptly rectify an inadvertent violation of the Protective Order. ECF 42 at ¶¶ 4-5.

The parties' stipulated order protects "medical information concerning any individual [and] personnel or employment records of a person who is not a party to the

case." ECF 21, at 2. Exhibit 4 is a medical record. Exhibit 11 is a communication concerning the employment status of another employee. The parties acknowledge that both exhibits were marked "confidential" pursuant to the Protective Order.

For material labeled "confidential" to be sealed from the public, the filing party must comply with Rule 105.11's sealing provisions. *See* Loc. R. 104.13 (explaining that proposed confidentiality orders must include "a provision that whenever materials subject to the confidentiality order (or any pleading, motion or memorandum referring to them) are proposed to be filed in the Court record under seal, the party making such filing must simultaneously submit a motion and accompanying order pursuant to L.R. 105.11"); *Shackleford v. Vivint Solar Dev., LLC*, No. ELH-19-954, 2021 WL 3406524, at *6 (D. Md. Aug. 4, 2021) ("[T]he 'mere existence of a confidentiality order . . . does not guarantee a right to seal all documents claimed to be sensitive.'") (quoting *Minter v. Wells Fargo Bank*, 258 F.R.D. 118, 123 (D. Md. 2009) (ellipses in original)). Rule 105.11 requires that the sealing motion "include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." *See also Minter*, 258 F.R.D. at 123 (finding that even if unopposed and filed pursuant to a confidentiality order, a Rule 105.11 motion to seal requires "specific factual representations" to support the motion.).

In general, "sensitive medical or personal identification information may be sealed" unless "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011) (citations omitted). Additionally, a court may grant a motion to seal if the sensitive information is "integral to [the] claims" to the extent that "redaction would render the documents unreadable." *Dollar v. Anne Arundel Cnty.*, No. 24-1642-BAH, 2025 WL 1347064, at *6 (D. Md. May 7, 2025).

The parties agree that Exhibits 4 and 11 should be sealed due to the confidentiality agreement. Moreover, their nature justifies sealing, despite the motions lacking the specified representations normally required. Exhibit 4 falls within the category of medical information that has justified sealing in numerous cases. *See, e.g.*, *Rock*, 819 F. Supp. 2d at 475; *Dollar*, 2025 WL 1347064, at *6. A non-party's employee information is sensitive enough to warrant sealing as well. *See, e.g.*, *Addi v. Corvias Mgmt.-Army, LLC*, No. ELH-19-3253, 2020 WL 7707039, at *2 (D. Md. Dec. 28, 2020); *Perez v. Jupada Enters., Inc.*, No. 10-3118, 2011 WL 501601, at *2-4 (S.D.N.Y. Feb. 14, 2011). The scope of the request to seal these two documents is not, in the Court's view, too broad.

However, the documents in Exhibits 25 through 39 do not so clearly justify sealing instead of redaction. While Campbell asserts that these documents "contain sensitive and confidential information, including the names of non-parties, employee information, personnel and employment-related records, internal disciplinary information, and other materials implicating significant privacy interests," she does not explain which privacy interests are implicated or why redaction of identifying information would not suffice. *See* ECF 39. Therefore, the motion to seal Exhibits 25 through 39 will be denied without prejudice to renew within fifteen (15) days of this order. Any renewed motion by Campbell must comply with Rule 105.11's call for specific facts supporting the request and reasons why redaction would not suffice. If no such motion is filed within 15 days, those exhibits will be unsealed.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff's motions for sanctions and to strike (ECFs 34, 37, 45, 46) are DENIED; Defendant's Motion to Strike and for Sanctions (ECF 41) is DENIED; Plaintiff's Emergency Motion to Seal  (ECF 39) is denied without prejudice to renew; and Plaintiff's Motion to Seal Exhibits 4 and 11 (ECF 42) is GRANTED.  A separate implementing order will issue.


Date: July 28, 2026                                     _____/s/_____

                                                         Charles D. Austin
                                                         United States Magistrate Judge